UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-413-GWU

LUTHER L. SAMS,                                                          PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                       DEFENDANT.

**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the Court on cross-motions

for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled.  If no, proceed to Step 2.
      See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical
      or mental impairment(s)? If yes, proceed to Step 3.  If no, the
      claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any
      impairment(s) significantly limiting the claimant's physical or
      mental ability to do basic work activities?  If yes, proceed to

06-413 Sams

Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

06-413 Sams

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.   20 C.F.R. Section 404.1529 (1991).   However, in evaluating a claimant's allegations of disabling pain:

06-413 Sams

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

06-413 Sams

or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id</u>. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. <u>E.g., Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

06-413 Sams

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency

6

may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).   Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.   Varley  v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Luther L. Sams, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of status post right ankle fracture, back pain, an adjustment disorder with depressed mood, substance abuse, and alcohol abuse.  (Tr. 17).  Nevertheless, based on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Sams retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 22-4).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the same work history and educational background as the plaintiff could perform any jobs if he were limited to work at the "medium" level, and had a "limited but satisfactory" ability to relate to coworkers, interact with supervisors, deal with work stresses, and maintain attention and concentration.  (Tr. 425-6).  The VE responded

that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed at both the medium and light levels in the state and national economies.  (Tr. 426-7).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Initially, it should be noted that, although the plaintiff's DIB and SSI applications were not filed until July 28, 2004, they both alleged a disability onset date of January 1, 1979.  (Tr. 52-6, 396-9).  The ALJ noted that the plaintiff had previously filed applications for DIB, the most recent of which was dismissed in December, 1993.  (Tr. 15).  She declined to reopen the prior applications.  (Id.).  Therefore, this court is without jurisdiction to review the prior applications, and, in any event, the plaintiff did not produce any significant amount of evidence concerning his condition prior to 2004.  Since his Date Last Insured (DLI) for DIB purposes was June, 1982, the only issue remaining is whether he established disability on his SSI application.

At the administrative hearing, Mr. Sams testified that his physical problems included back pain, leg pain, and breathing.  (Tr. 414).  Although his back pain had been present since a broken pelvis had occurred in a 1971 motor vehicle accident, he had not received any medical treatment since 1996 (Tr. 414) except for

06-413 Sams

emergency hospitalizations.  He had two surgeries on a fractured leg in 1994 which was still painful and swollen, although he could stand for approximately 20 minutes. (Tr. 419-20).  He had also been hospitalized for a "heart attack" in July, 2005 and told that he had only six months to live if he did not stop drinking.  (Tr. 416).  He said he had not had a drink since that time.  (Id.).  He also described nervous problems, which he attributed to having encephalitis as a child.  (Tr. 424).  He also had a longstanding history of seizures, but had not been on medication for years.  (Tr. 417).

Medical records in the transcript do show that the plaintiff was treated at the University of Kentucky Medical Center (UKMC) from June 28 through July 7, 2004 for a open tibial fracture of the right leg.  (Tr. 119).  He was discharged with instructions to have no weight bearing on the right leg (Tr. 120) and was seen on only one occasion on follow-up, when it was noted that his x-rays showed hardware intact and in good position and was told to continue nonweightbearing on the leg until seeing the physician in six more weeks.  (Tr. 392).  However, the plaintiff testified that he had been able to resume weight bearing and used an ambulatory aid for approximately 10 to 11 months.  (Tr. 421).

Mr. Sams was given a consultative physical examination by Dr. Kip Beard on April 12, 2005.  At that time, Dr. Beard was able to review the medical records from the 2004 hospitalization.  (Tr. 184).  His examination showed that Mr. Sams had an

9

06-413 Sams

antalgic limp on the right side, but was able to stand unassisted and had only a mild degree of difficulty arising from a seated position and stepping up and down from the examination table. (Id.). There was a skin graft and possible muscle flap on the right medial shin and the right ankle showed some pain on range of motion and tenderness. (Tr. 186). He could stand on either leg alone, albeit with discomfort on the right. There was only mild weakness of the right ankle with no atrophy or sensory loss. He also had difficulty walking on his heels and toes, with tandem walking, and with squatting due to the right ankle problem. (Id.). Mr. Sams also alleged having seizures, most recently three weeks ago, but had no recent examinations and said he had not been on medication for 10 to 12 years. (Tr. 182). He became somewhat out of breath with exertion, but also was smoking one and one-half packs of cigarettes a day and also drinking a fifth of vodka every day. (Tr. 183). Dr. Beard's eye examination showed cataracts and vision in the left eye was only 20/200, compared to 20/40 on the right, but these figures were without glasses. (Tr. 184). Regarding the patient's complaint of back pain, Dr. Beard detected pain on range of motion testing and muscle spasm without tenderness, but Mr. Sams was able to bend forward 70 degrees at the waist and straight leg raising was normal. (Tr. 186). Dr. Beard's impression was an open right tibial and fibula fracture status post surgery with chronic pain, chronic musculoskeletal thoracolumbar pain and possible underlying degenerative disc disease, a seizure disorder "by history," and

possible alcohol dependence. (Id.). He concluded that there were objective findings to support "some limitation" of "prolonged" standing or walking, walking on hazardous terrain, and "heavy" lifting and carrying. (Tr. 187).

On June 26, 2005, the plaintiff was hospitalized for chest pain, and had an episode of atrial fibrillation in the hospital, which the physician felt was probably precipitated by alcohol use. (Tr. 260-1). Mr. Sams was noted to be drinking heavily every day, and was inebriated when he came to the emergency room. (Tr. 260). An ultrasound of the liver showed fatty infiltration, and he was put on precautions for alcoholic withdrawal (Tr. 257-8). Drug testing was positive for cannabis, and Mr. Sams also stated that he used cocaine. (Tr. 257). By the time of discharge, he was in improved condition, and was advised to follow up in the physician's office and also with Comprehensive Care Center (CCC). (Tr. 253, 367). No restrictions are given.

In view of the fact that no treating source placed permanent restrictions, the ALJ's hypothetical factors were reasonably consistent with the conclusions of the consultative examiner, Dr. Beard. (Tr. 187). A state agency physician who reviewed the record on May 2, 2005 had concluded that the plaintiff could perform medium level exertion with occasional climbing of ramps and stairs, crouching, crawling, and had a need to avoid concentrated exposure to vibration and hazards. (Tr. 214-21). While not all of these restrictions were included in the hypothetical question, the Dictionary of Occupational Titles (DOT) indicates that several of the jobs identified

06-413 Sams

by the VE such as "bagger" and "dining room attendant" would not have involved exposure to climbing or vibration. The plaintiff has not raised the issue of the state agency physician's restrictions, and in view of the information from the DOT, no useful purpose would be served by a remand for additional vocational testimony on this issue.

The plaintiff does argue that the ALJ erred in failing to find his vision problems and seizures to be severe impairments. However, there is no medical evidence of any seizure problem, although there was some evidence of delirium tremens due to alcohol withdrawal, a condition that cannot be considered a basis for disability under Public Law 104-121. Regarding the plaintiff's eyesight, Dr. Beard found limited vision in the left eye, but there is no evidence that the problem would not be correctable with glasses, and Dr. Beard did not assign any limitations related to vision. Therefore, the plaintiff failed to carry his burden of proof on these issues.

Regarding the plaintiff's allegations of nervousness, it appears that they are linked to his problem with alcohol dependence and other substance abuse.

Dr. Crystal Sahner conducted a consultative psychological examination of Mr. Sams on April 19, 2005. (Tr. 188). The plaintiff stated that his driver's license had been suspended for DUI, and he had been drinking two pints of whiskey every day since his father died in December, 2004. (Tr. 188-90). He used marijuana approximately once a week and added that he had been arrested approximately 55

12

times.  (Tr. 190).  He had been depressed for many years, but felt his depression was worse since the death of his father, and indicated that he wanted to withdraw from everything, felt anxious, and could barely relax. (Tr. 189-90).  He had attended CCC on one occasion for nerves, and received a diagnosis of generalized anxiety disorder and alcohol dependence in early full remission, but could not afford to have any kind of treatment.  (Id.).  His daily activities included seeing friends a couple of times a week and sitting with a friend at a store and watching traffic go by.  Dr. Sahner noted that Mr. Sams had an unkempt appearance and body odor, but he was oriented and his recent and remote memory were intact.  (Tr. 191).  He had an average fund of information, his abstract thinking was normal, and his decision-making processes seemed adequate for simple decisions, although given the degree of his drinking, his ability to make more complex decisions was questionable.  (Tr. 191-2).  Dr. Sahner diagnosed an adjustment disorder with depressed mood and alcohol dependence.  (Tr. 192).  She felt he would have a "moderately affected" ability to interact appropriately with fellow workers and supervisors in the workplace due to his isolative behavior and, due to alcohol consumption, would have a questionable ability to tolerate the stress and pressure of day-to-day employment; apart from alcohol consumption his ability would be moderately affected at worst by his adjustment disorder.  (Tr. 193).  She felt he would have an adequate ability to sustain attention and concentration to perform simple, repetitive tasks, and would

06-413 Sams

have no problem understanding, remembering, and carrying out simple, repetitive instructions.  (Id.).

A licensed clinical social worker at CCC provided the information that Mr. Sams had been seen on one occasion in December, 2004, complaining of nervousness and a history of alcohol dependence.  (Tr. 197).  Although he said he did not drink any more, he did not keep his appointment for a psychiatric examination.  (Id.).  He was given a diagnosis of generalized anxiety disorder and alcohol dependence in early full remission with a Global Assessment of Functioning (GAF) score of 60.  (Tr. 198).

A state agency psychologist, Dr. Ilze Sillers, examined the evidence on May 11, 2005 and determined that Mr. Sams would have a "moderately limited" ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the general public, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others.  (Tr. 223-5).

Although the plaintiff argues on appeal that the ALJ did not take Dr. Sahner's limitation on his ability to interact appropriately with fellow workers and supervisors into account, some limitation was cited in the hypothetical question.  (Tr. 426). Although the hypothetical question put the restrictions in terms of a "limited but satisfactory" ability, the Sixth Circuit has indicated that this language is reasonably

14

06-413 Sams

consistent with moderate limitations.  <u>Longworth v. Commissioner of Social Security</u>, 402 F.3d 591, 594 (6th Cir. 2005).

Substantial evidence supports the administrative decision, which will be affirmed.

This the 29th day of June, 2007.

**Signed By:**

<u>*G. Wix Unthank*</u>

**United States Senior Judge**